IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

ROBERT E. TALIAFERRO, JR.,

                                                                    OPINION AND ORDER

                Plaintiff,

                                                                     12-cv-921-bbc

    v.

RANDALL HEPP,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

        In this proposed civil action under 42 U.S.C. § 1983, plaintiff Robert Taliaferro, Jr., an inmate at Jackson Correctional Institution, alleges that defendant Randall Hepp violated his rights under the First and Fourteenth Amendment and under federal copyright law by disciplining him for selling paintings on commission and on a website. Specifically, plaintiff challenges DAI Policy 309.36.01, which states that inmates may sell hobby projects only through the prison's hobby program and only for the cost of supplies plus ten percent.

        Because plaintiff is a prisoner, I must screen his complaint and dismiss any portion that is legally frivolous, malicious, fails to state a claim upon which relief may be granted or asks for money damages from a defendant who by law cannot be sued for money damages. 28 U.S.C. §§ 1915(e)(2) and 1915A. In addressing any pro se litigant's complaint, the court must construe the allegations liberally. <u>Haines v. Kerner</u>, 404 U.S. 519, 521 (1972).

        Having reviewed the complaint, I conclude that plaintiff may not proceed on his

1

claims at this time. Plaintiff's core allegations fail to state a claim under the First Amendment because DAI Policy 309.36.01 is a reasonable regulation of prisoners' rights to sell artwork, but some of plaintiff's allegations suggest that he may have a claim, so I will give plaintiff chance to file an amended complaint. However, I will dismiss plaintiff's Fourteenth Amendment claims because his allegations that he was disciplined more harshly than another prisoner do not give rise to an equal protection claim and his allegations fail to show that defendant violated his copyrights or his right to contract.

Plaintiff has also filed a motion to amend the complaint to strike his request for punitive damages, dkt. #2, which I will deny as moot.

In his complaint, plaintiff has alleged the following facts.

ALLEGATIONS OF FACT

Plaintiff Robert Taliaferro, Jr. is a visual artist whose art has appeared in a variety of exhibits and galleries in the United States and abroad. While in prison, his family members, friends and other professionals have sold many of his paintings, and the funds have been used to purchase new supplies and to help out his family members. Approximately nine years ago, a friend of plaintiff created a web page for plaintiff's artwork on Artspan.com, a social media website dedicated to displaying and selling artwork. Plaintiff has not engaged in any fraudulent activity, and no prison officials have ever alleged that plaintiff engaged in any fraudulent activity. Over the years, prison staff members made casual comments about the website to plaintiff. No one told him that selling his artwork violated prison policies.

It is not clear when or why prison staff began investigating plaintiff's artwork sales. Sometime around April 2012, lieutenant Mark Hagberg monitored phone calls between plaintiff and Judith Livingston, plaintiff's sales agent. During the phone calls, plaintiff and Livingston talked about plaintiff's website sales and discussed a contract for the commission of a piece of artwork. The amount of the proposed commission would have been $1500, but plaintiff never completed the transaction. After listening to the calls, Hagberg viewed the Artspace page and saw plaintiff's artwork for sale.

On March 19, 2012, Hagberg filed a conduct report against plaintiff based on the website and phone call. The report charged plaintiff with engaging in a "business or enterprise" in violation Wis. Adm. Code § DOC 303.32. It also charged plaintiff with violating DAI Policy 309.36.01 through Wis. Adm. Code § 303.63, which makes the violation of each institution's specific policies and procedures a disciplinary offense. DAI Policy 309.36.01 (attached to this opinion) is a comprehensive regulation of prisoners' leisure time activities. With respect to the sale of hobby items, the policy states that "[c]ompleted hobby projects must be sold through the institution/center hobby program or shall be disposed of per institution/center procedure," and "[s]ales of hobby items shall not be permitted by consignment." Id. at § II(G), (H). In addition, the conduct report noted that the Jackson Correctional Institution inmate handbook states that hobby activities "are not to be used as a business enterprise." Conduct Report, Cpt., dkt. #3-3, Ex. 8B.

The conduct report and subsequent hearing decision also noted that IV(C)(3) of DAI policy 309.36.01 states that completed hobby projects must be sold through the display case

3

in the visiting room and the "recreation leader shall determine the sale amount for all items [which] will include the estimate cost of the materials plus 10%. The purpose of this is to replace material and allow the inmate to continue with a hobby for enjoyment, not for the inmate to view this as a job." Cpt., dkt. #3-3, at 22, 24. These provisions are not included in the attached policy, which has an effective date of February 25, 2008.

After receiving the conduct report but before the hearing, plaintiff directed his agent to take down the website. The hearing officer found plaintiff guilty and sentenced him to 61 days' loss of recreation. Plaintiff filed an appeal with defendant Randall Hepp, the prison warden, which defendant denied. Plaintiff also submitted an inmate complaint, in which he argued that DAI Policy 309.36.01 fails to protect copyright interests, violates the First Amendment right to free expression and, as applied to him, violates his right to equal protection under the Fourteenth Amendment. The inmate complaint and plaintiff's subsequent request for review were rejected on procedural grounds.

Around the same time that the charges were brought against plaintiff, another prisoner was paid $45 by family members for a crocheted hobby item. When confronted by prison officials, the prisoner said that he charged his family only for the cost of his supplies, and the prisoner was given a simple warning.

OPINION

A.  First Amendment

Plaintiff contends that DAI Policy 309.06.01 violates his First Amendment right to freedom of expression. The First Amendment protects visual art that is "purely artistic expression." Piarowski v. Illinois Community College District, 759 F.2d 625, 628 (7th Cir. 1985). I will assume without deciding that the First Amendment also protects the right to sell artwork. White v. City of Sparks, 500 F.3d 953, 954 (9th Cir. 2007) ("[T]he First Amendment extends to the sale by an artist of his paintings.").

Prisoners retain their First Amendment rights, but the prison may restrict those rights in ways that are "reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89 (1987). A district court may screen a pro se complaint using the Turner analysis when the purposes of the restriction are evident from the complaint and the court "can readily discern the validity and rationality of the connection between this legitimate penological interest" and the restrictions. See Munson v. Gaetz, 673 F.3d 630, 632-33 (7th Cir. 2012) (citing conduct report attached as exhibit to complaint to identify prison's asserted interest).

Under Turner, four main factors are relevant to determine the reasonableness of the prison's restriction. The first, threshold factor is that "there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it." Id. at 89 (internal quotation omitted); Woods v. Commissioner of the Indiana Dept. of Corrections, 652 F.3d 745, 748-49 (7th Cir. 2011). In making this determination, a court should accord "substantial deference to the professional judgment of

5

prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." Overton v. Bazetta, 539 U.S. 126, 132 (2003).

The other three factors are relevant but not determinative. Singer v. Raemisch,593 F.3d 529, 534 (7th Cir. 2009). The second factor is "whether there are alternative means of exercising the right that remain open to prison inmates." Turner, 482 U.S. at 90. Third, the court must consider "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally." Id. Last, "the existence of obvious, easy alternatives may be evidence that the regulation is not reasonable, but is an exaggerated response to prison concerns." Id. (quotations omitted).

Beginning with factor one, I must determine whether DAI Policy 309.06.01 furthers any legitimate correctional system goals and if it does, whether the policy is an appropriate means of furthering these goals. The Department of Corrections' regulations explain the purposes served by the restriction on the sale of hobby items. The policy allowing prisoners to sell their completed hobby projects through the prison at a limited profit is an exception to the general rule that inmates are prohibited from engaging in any business or enterprise. Wis. Admin. Code § DOC 303.32. The appendix to DOC Chapter 303 explains why the department prohibits prisoners from engaging in business activities:

> The purposes of [DOC 303.32] are to prevent inmates who set up businesses from taking advantage of any member of the public; to prevent any state liability upon contracts entered into by inmates; and to prevent fraud on the public by inmates who order items and do not pay. If inmates were allowed to conduct businesses by mail from inside an institution, this would greatly increase the amount of mail and supervision required. Furthermore, it is

6

> possible an unsuspecting outsider would pay for something the inmate could not supply, leading to the unsatisfactory alternatives of a victim who has lost money, or state liability. Inmates have opportunities to work in institutional jobs and on work release, and to sell hobby items through official channels. These opportunities plus the exception provide sufficient ways for inmates to work, make money, and learn skills.

Wis. Admin. Code § DOC 303, Subch. X, App.

This appendix identifies legitimate reasons to prohibit prisoner's business activities, including a business selling hobby items. Regulations that limit or prohibit prisoners from engaging in business activities are common, and courts have held that these laws are a legitimate regulation of prisoner's residual property and liberty interests under the constitution. E.g., King v. Federal Bureau of Prisons, 415 F.3d 634, 636 (7th Cir. 2005) (noting in dicta that prohibition on conducting business is "permissible restriction on prisoners' residual freedom"); French v. Butterworth, 614 F.2d 23, 24 (1st Cir. 1980) (holding prisoners have no property or liberty right to conduct business under Fourteenth Amendment); Garland v. Polley, 594 F.2d 1220, 1221-22 (8th Cir. 1979) (holding prison regulations allowing sale of "hobby crafts" did not create a constitutionally protected interest in operating a business). Furthermore, prisons have substantial discretion to regulate inmates' money and finances. Sahagian v. Dickey, 646 F. Supp. 1502, 1508-10 (W.D. Wis. 1986) (upholding restrictions on how prisoners may send and save money).

The Division of Adult Institution's hobby policy strikes a reasonable balance between allowing prisoners to engage in unregulated business activities and prohibiting all sales of artwork. By controlling how and for what price prisoners sell their artwork, the prison prevents prisoners from making promises to the public that they cannot or will not fulfill,

reduces the risk of state liability and avoids the need to supervise each prisoners' individual contracts to sell hobby projects. For these reasons, DAI Policy 309.06.01 is an appropriate means of furthering legitimate penological interests.

"A district court need not explicitly articulate its consideration of [Turner factors two through four] . . . if there is only minimal evidence suggesting that the prison's regulation is irrational." Mays v. Springborn, 757 F.3d 643, 648 (7th Cir. 2009). Although plaintiff's complaint offers no reason to think that the prison's hobby policy is irrational, I will briefly address the remaining factors. The existing policy offers plaintiff an alternative means of exercising his right to sell his artwork: he can sell it through the institution's hobby program. With respect to the third factor, the appendix to DOC Chapter 303 explains why allowing inmates more freedom to engage in art-related business would drain prison resources. Plaintiff argues in his complaint that the prison should not be permitted to restrict his art sales unless plaintiff was engaged in fraud, but such individualized inquiry would undermine the purposes of the regulation. With respect to factor four, I cannot rule out the possibility that an easier alternative to DAI Policy 309.06.01 exists. Nevertheless, it is enough that the policy is reasonable and factors one through three do not support plaintiff's claim. When possible, courts should refrain from second-guessing how prisons carry out their policies. Overton, 539 U.S. at 132. I conclude that the challenged portions of DAI Policy 309.06.01 represent a reasonable regulation of plaintiff's First Amendment right to sell his artwork.

Plaintiff's complaint raises three additional First Amendment claims: (1) DAI Policy 309.36.01 violates the First Amendment rights of others to display, buy and sell plaintiff's

artwork; (2) applying DAI Policy 309.36.01 to plaintiff violates his First Amendment right to freedom of expression, because the policy does not explicitly prohibit the sale of artwork through a social media website; and (3) an "implied threat" that failure to remove the artwork from the website could lead to further disciplinary action violates plaintiff's First Amendment rights. Because the first two remaining claims rely on the premise that DAI Policy 309.36.01 is an unreasonable regulation of inmates' right to freedom of expression, which I have rejected, I will deny plaintiff leave to proceed on these claims as well.

There is a sliver of hope for plaintiff's final First Amendment claim, but I cannot let plaintiff proceed on this claim because he has not pleaded sufficient facts to state a plausible claim for relief against defendant. Fed. R. Civ. P. 8. To state a "plausible" claim, the complaint must include enough detail about what each defendant did to show a real possibility (and not just a guess) that plaintiff might be able to prove each element of his claims after he has an opportunity to investigate them. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Plaintiff alleges that he took down his website because prison officials made an "implied threat" that continuing to display his artwork online would lead to further discipline. The penological interests described above would not justify prohibiting prisoners from displaying artwork online. However, it is not clear from the complaint whether someone threatened to punish plaintiff if he continued to display his work online or only if he continued to display *and sell* it online. It is also not clear who made the implied threat or when it was made. Because plaintiff does not allege that the official prison policy prohibited displaying artwork online or that defendant participated in the implied threat,

9

defendant cannot be held liable. Palmer v. Marion County, 327 F.3d 588, 594 (7th Cir. 2003) (personal liability under 42 U.S.C. § 1983 must be based on defendant' personal involvement in constitutional violation). Accordingly, I must dismiss plaintiff's First Amendment claim based on the implied threat as well, but plaintiff may file an amended complaint for this claim that address the deficiencies described in this final paragraph.

B. Equal Protection

Plaintiff contends that defendant violated his right to equal protection under the Fourteenth Amendment when he disciplined plaintiff for selling artwork online but did not discipline another inmate who sold a crocheted item to family members. Because plaintiff does not allege that defendant discriminated against him on the basis of his membership in a protected class or his exercise of a fundamental right, his claim must be that he was singled out arbitrarily for discriminatory treatment. To state an equal protection claim under this theory, which is often referred to as the "class-of-one theory," plaintiff must allege that government officials treated another similarly situated person more favorably than him and there was no rational basis for the difference in treatment. Engquist v. Oregon Dept. of Agriculture, 553 U.S. 591, 601-02 (2008); Thayer v. Chiczewski, 705 F.3d 237, 255-56 (7th Cir. 2012).

Plaintiff's allegations fail to state a claim for violation of his right to equal protection, for two reasons. First, plaintiff has not identified another similarly situated inmate. Plaintiff had sold paintings to the public online and was attempting to sell a painting through a sales

agent for $1500. These activities are substantially different from selling a crocheted item to family members for $45. The prison had obvious reasons for treating plaintiff and the other prisoner differently.

Second, this court has held that class-of-one claims are likely never cognizable in the prison disciplinary context. E.g., Jackson v. Flieger, 2012 WL 5247275, *4 (W.D. Wis. Oct. 23, 2012); Upthegrove v. Holm, 2009 WL 1296969, *1 (W.D. Wis. May 7, 2009) ("[C]urrent rulings suggest[] that 'class-of-one' equal protection claims are not cognizable in such an individualized and discretionary setting as the prison setting."). The class-of-one theory is not applicable to state actions that involve "discretionary decisionmaking based on a vast array of subjective, individualized assessments," because in that context "allowing a challenge based on the arbitrary singling out of a particular person would undermine the very discretion that state officials are entrusted to exercise." Engquist, 553 U.S. at 604. See also Abcarian v. McDonald, 617 F.3d 931, 939 (7th Cir. 2010) ("We have interpreted Engquist to stand for the broad proposition that inherently subjective discretionary governmental decisions may be immune from class-of-one claims."). Defendant's decision to discipline plaintiff but not the other inmate rested on numerous individualized judgments about the severity and significance of their respective conduct and, therefore, cannot be challenged under a class of one theory.

C. Copyright and Fourteenth Amendment

Plaintiff alleges that DAI Policy 309.06.01 does not allow him to create contracts with his buyers that "give informed consent and define the rights and privileges that are retained by plaintiff and his heirs for [proprietary] art that is protected by U.S. Copyright Law." Cpt., dkt. # 3-3, ¶ 49. Plaintiff also alleges that these restrictions violate his substantive right to contract under Fourteenth Amendment.

None of plaintiff's factual allegations suggest that defendant is infringing plaintiff's copyrights. DAI Policy 309.06.01 does not require plaintiff to give up his copyrights simply because he may sell paintings only through the prison without side contracts specifying the parties' respective copyright interests. "[O]riginal works of authorship" receive copyright protection automatically once they are "fixed in a tangible medium of expression." 17 U.S.C. §§ 102(a). The "[c]opyright in a work subsists from its creation and . . . endures for . . . the life of the author and 70 years after the author's death." 17 U.S.C. § 302(a). Furthermore, by selling his physical paintings, plaintiff does not transfer any of these copyright interests to the buyer. 17 U.S.C. § 202.

Insofar as plaintiff is alleging that prison regulations prevent him from licensing his copyrights to others or from selling his paintings for their market price, his claim is that the prison rules unreasonably restrict his right to contract. However, plaintiff has no absolute right to enter into contracts under the Fourteenth Amendment. See, e.g., West Coast Hotel Co. v. Parrish, 300 U.S. 379, 391-93 (1937). The government may impose reasonable regulations on the freedom of contract in the interest of the community. Id. at 392. As explained above, it is reasonable for prisons to regulate how inmates engage in business and

to limit their ability to enter contracts with members of the public.  See King, 415 F.3d at 636; French, 614 F.2d at 24; Garland, 594 F.2d at 1221-22 .  Because DAI Policy 309.06.01 does not violate plaintiff's copyrights or his right to property or contract under the Fourteenth Amendment, I will deny plaintiff leave to proceed on these claims.

### D. Procedural Due Process

Plaintiff alleges that defendant's "arbitrary rejection" of his appeal violates his right to due process under the Fourteenth Amendment.  Cpt., dkt. # 3-3, ¶50.  The Fourteenth Amendment provides that "no state shall . . . deprive any person of life, liberty, or property, without due process of law."  U.S. Const., amend. XIV, § 1.  However, the Fourteenth Amendment does not give prisoners an independent substantive right to adequate grievance procedures, Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7th Cir. 1996), and plaintiff's allegations fail to show that defendant's procedural failures deprived him of any protected liberty or property interests.  As explained above, defendant did not deprive plaintiff of his copyright to the artwork and the policy limiting plaintiff's ability to sell his paintings was a reasonable limit on his right to property and contract.  Plaintiff also alleges that the conduct report will influence his future parole hearings and custody determinations negatively.  However, because the conduct report did not violate plaintiff's constitutional rights, it is permissible for the the state to consider it in future proceedings.  Because plaintiff's allegations do not show that he was deprived of any protected liberty or property right, his claim that defendant violated the due process clause fails to state claim upon which

relief may be granted.

ORDER

IT IS ORDERED that

1. Plaintiff Robert Taliaferro, Jr. is DENIED leave to proceed on his claims.

2. Plaintiff's claim that prison officials threatened to punish him if he displayed his artwork online, even if it was not for sale, is DISMISSED WITHOUT PREJUDICE to plaintiff filing an amended complaint.

3. Plaintiff's remaining claims are DISMISSED WITH PREJUDICE for failure to state a claim.

4. Plaintiff may have until March 29, 2013, to file an amended complaint raising his claim that prison officials threatened to punish him if he displayed his artworks online. If plaintiff does not file an amended complaint by that date, the court will dismiss this case with prejudice and assess plaintiff a strike under 28 U.S.C. § 1915(g).

Entered this 11th day of March, 2013.

BY THE COURT:

/s/

BARBARA B. CRABB
District Judge